## F. S. BISSELL v. M. W. SAVAGE FACTORIES, INC.[1]

### June 1, 1917.

### Nos. 20,447—(228).

**Corporation — liability of company for money obtained by agent.**

> Where an agent who takes subscriptions for stock in a corporation and who is authorized to receive checks, cash or money orders thereon, receives from a subscriber a certificate of stock in another corporation, to be by him sold and the proceeds applied in payment for stock subscribed for, *held*, under the evidence in this case, that the corporation is liable for money received by such agent on the sale of such certificate.

Action in the district court for Hennepin county to recover $105

[1] Reported in 162 N. W. 1066.

dividends declared upon defendant's preferred stock held by plaintiff. The answer alleged that the shares of stock were issued without consideration and through the mistake of defendant's officers and employees, and prayed that a certain certificate of stock held by plaintiff be canceled. The case was tried before Dickinson, J., who at the close of the testimony denied defendant's motion for a directed verdict and directed a verdict in favor of plaintiff for $88.17. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. H. Boutelle,* for appellant.

*Rieke & Hamrum,* for respondent.

QUINN, J.

This is an action to recover certain dividends upon 50 shares of preferred stock alleged to have been issued by defendant to plaintiff. Upon the trial below, plaintiff had a verdict for $88.17. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.

Defendant is a Minnesota corporation with its principal place of business in Minneapolis. During the year 1911 M. W. Savage, now deceased, was its president, and R. E. Wyer its secretary. In 1911 when the defendant was putting out its stock, Wyer was in charge of the stock sales department. W. B. Ewing was his assistant, and as such employed H. L. Curtis, referred to in the testimony, as a salesman. Upon the trial Wyer testified that the stock salesman was authorized to receive checks, cash or money orders for the stock sold by him.

The plaintiff is a practicing physician and resides in Minneapolis. During the early part of 1911 he received a circular for stock sales sent out by defendant. Plaintiff answered the circular by letter. Shortly thereafter Curtis called upon plaintiff at his office with the letter, also a letter purporting to have been written by M. W. Savage, president of the company, which he exhibited to plaintiff. Upon the trial plaintiff testified, under objection, to the contents of this letter as follows:

"This letter was written largely in the first person. My recollection of the contents is that the letter stated that Mr. Curtis was a representative of M. W. Savage, and that any transactions which I wished to carry

out with Mr. Savage or with Mr. Curtis would be the same as though conducted with Mr. Savage in person. It was written largely in the first person. * * * That is all. That is the important part of the letter."

The plaintiff also testified that, at the time Curtis handed him the Savage letter, he compared the signature thereon with other signatures of Mr. Savage which he knew to be genuine and that the signature to the letter was the genuine signature of Mr. Savage.

Curtis was soliciting the sale of stock in the defendant corporation, and took subscription No. 1 from plaintiff for 50 shares of preferred stock at $10 per share. This stock was paid for and a certificate issued to plaintiff's wife. Thereafter plaintiff gave Curtis subscription No. 2 for 50 shares and later gave him subscription No. 3 for 150. At the time of subscription No. 3, plaintiff turned over to Curtis 20 shares of stock in the Dan Patch Company, taking a receipt therefor with the understanding that Curtis was to dispose of same and apply the proceeds thereof in payment for the stock subscribed for. Plaintiff paid to defendant, upon the last two subscriptions for stock, the sum of $500, for which he was given credit upon defendant's books. In June, 1911, a certificate of stock was issued to plaintiff's wife for 50 shares, but it was not charged to his account in defendant's books, so the account stood upon the books as though such stock had not been issued.

In November, 1913, defendant issued a certificate for 50 shares to plaintiff, dating it back to June 22, 1911, and the subscription for the balance of the stock was canceled. Curtis had received, upon the 20 shares of Dan Patch stock which the plaintiff had turned over to him, the sum of $600, but no credit therefor was ever given plaintiff upon defendant's books.

In 1915 defendant declared a dividend of 21 per cent on its preferred stock, covering a period of about 2½ years. Upon this statement of facts defendant refused to recognize the certificate of stock issued to plaintiff in November, 1913, or to pay any dividend thereon, claiming that the same was issued to the plaintiff under a misapprehension of facts, and that said stock had never been paid for. Plaintiff insisted that it had been paid for through the money which Curtis had received in the manner above stated, and brought this action to recover the dividend thereon.

It is contended on behalf of defendant that the certificate in question was issued by it through a mistake on account of the condition of its books; that plaintiff had paid and defendant had received no considera- tion therefor, and that its issuance was illegal; that it was in no way liable for the $600 which Curtis had received upon the stock turned over to him by plaintiff, there being no express authority shown on the part of Curtis to make any such arrangement with plaintiff, or any facts from which an apparent or implied authority could be inferred. It appears from the undisputed testimony that defendant's salesman was expected to receive checks, cash or money orders on subscriptions for stock, and Mr. Wyer testified at folio 62: "I recognize that Mr. Curtis was in my employ and had authority to take subscriptions." This testimony, when considered in connection with the Savage letter which Curtis held, clearly justifies the plaintiff in turning the 20 shares of stock over to defendant's agent for disposition by him, the proceeds thereof to be applied in payment for the stock subscribed for, and, when the agent so received the money, it was his duty to turn it over to the defendant in payment for the stock. Curtis was in the employ of defendant, act- ing for it the same as though he had received a check from the plaintiff and procured the money upon it.

It appears that on March 29, 1911, plaintiff gave to Curtis his subscrip- tion for 150 shares of stock to be paid for within 10 months when certifi- cates were to be issued therefor, and at the same time turned the 20 shares of Dan Patch Company stock over to Curtis. On June 7, 1911, Curtis received $600 upon such stock, but it seemed did not turn the same over to defendant. At the time of taking the subscription, plaintiff paid Curtis $100 and at several other times paid him divers sums of money upon his subscriptions, all of which he turned over to defendant. We think it is not with defendant to say at this time that it is not liable for the $600 so received by Curtis.

We have examined the record and considered the objections of de- fendant to the admissibility of evidence as to the authority of Curtis in the premises and find no reversible error. We think sufficient found- ation was laid for the proof.

Order affirmed.